BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLIPPER SHIPPING LINES LTD.,<br><br>Plaintiff,<br><br>- against -<br><br>GLOBAL TRANSPORTE OCEANICO S.A.,<br><br>Defendant. | 06 CV 15299 (PKL) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GLOBAL TRANSPORTE OCEANICO S.A.'S COUNTERCLAIM FOR COUNTERSECURITY UNDER RULE E(7) OF SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Global Transporte Oceanico S.A. ("Global") hereby replies to the opposition brief of plaintiff Clipper Shipping Lines Ltd. ("Clipper") dated February 8, 2007 and respectfully shows:

## THE RELEVANT FACTS

Additional relevant facts are stated in the accompanying declaration of Jeremy J.O. Harwood dated February 14, 2007 ("Dec."). Clipper asserts that Global is attempting to "game the system ... ". It claims that despite having obtained an <u>ex parte</u> attachment order in the sum of $1,644,192.40 it has only attached, to date, a total of $154,647.73. That total is stated in a footnote to the Opposition Brief. <u>Id</u>. ln. 1.[1] Clipper states that Global "fail[s] to mention at all in its motion papers that Plaintiff is secured only in the sum of $154,597.73." <u>Id</u>. at 2. The truth, however, is that Clipper, not Global, is aware of the sum it has attached to date <u>and</u> has the continuing the obligation to timely inform Global of such attachments under Local Rule B.2. This was precisely the reason Global's counsel asked, by email dated February 9, 2007 "how much have you attached to date and are you still serving [the PMAGs] on a daily basis?" Dec. Ex. 1. There was no "false premise" that Clipper had attached the full sum of its complaint. To the contrary, while Clipper asserts that it would be inequitable to grant countersecurity, for what it concedes are not "frivolous" counterclaims, for any more than "the sum of $154,597.43" its opposition makes two glaring factual omissions.

It continues to serve its Rule B Processes of Maritime Attachment and Garnishment ("PMAG") on its selected seven (7) banks on a daily basis in the

---

[1] Clipper's Brief wrongly adds the two sums.

hope of fully securing its claim. Dec. Ex. 1. It has also filed a separate attachment action against Clipper in Switzerland. Dec. ¶ 3.

## DISCUSSION

### POINT I

### THE COURT SHOULD DECIDE THE QUANTUM OF COUNTERSECURITY

Supplemental Rule E(7) states in material part:

> . . . a plaintiff for whose benefit such security has been given <u>must give security for damages demanded in the counterclaim unless the court for cause shown</u>, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise direct. (emphasis added)

Although Clipper cites <u>Result Shipping</u> for the "broad discretion" the Court has in ordering countersecurity and some courts have held that the amount of countersecurity for counterclaims should not exceed the amount of security posted by the original defendant, no mechanical formula is mandated by Supplemental Rule E(7). As stated in the second edition of Moore's Federal Practice:

> **A holding [precluding imposition of a larger bond on the counterclaim than that which was required of the original defendant]…would serve only to encourage sham suits and <u>races to the court house</u>**. Suppose, by way of illustration that two vessels collide and one suffers only minor damage and the other sustains very severe damage. If the owner of the slightly damaged vessel commences an action in rem against the severely damaged vessel a relatively small bond will be required

3

> by the owner of the severely damaged vessel. If the owner of the latter vessel is compelled to assert his much larger claim in the same action, it might be grossly unfair to limit the security for his claim to the amount of the bond he had to provide, since had he first commenced his action he could have compelled the posting of a bond large enough to compensate for the severe damages he alleges. In such a case, it might well be "just and reasonable" and more in keeping with the purposes of the rule providing for security on counterclaims to require that the original plaintiff post a larger bond to protect against the counterclaim than the original defendant had to post to protect against the original action. If courts are not alert to such facts, it might encourage the filing of sham suits by parties who know they are potential targets for large in rem actions. Similarly, a flat rule providing that security on counterclaims cannot exceed the amount of the original defendant's bond would encourage races to the courthouse by the least injured of the parties sustaining damages in a maritime occurrence.

7A J. Moore & A. Pelaez, Moore's Federal Practice § (E.15) at E-737 (2d Ed. 1988).

This Court permitted greater security on a counterclaim than a plaintiff obtained on its main claim in Verton Navigation, Inc. v. Caribica Shipping Ltd., no. 90 Civ. 6940; 1991 U. S. Dist. LEXIS 6722 (S.D.N.Y. May 1, 1991);

In Spriggs v. Hoffstot, 240 F.2d 76 (4th Cir. 1957), a counterclaimant sought security in an amount equal to the amount of security it had posted despite the fact that its counterclaims amounted to far less. The court, recognizing that the original purpose of permitting security on counterclaims was to place the parties on

an equal basis as regards security, but thought literal application of Rule 50 (the former admiralty rule prior to unification) inappropriate. According to the court:

> When the rule gives the cross-libellant a right to 'security in the usual amount,' his bond need not necessarily be in the exact amount of the original libellant's bond; nor is it necessarily in the amount of the cross-claim, because as in the original libellant's case…so in the cross-libellant's case the amount is subject to the exercise of the judge's discretion.

Id. at 79.

Thus, the court concluded that in exercising the discretion built into the rule, the trial judge need not be governed by the amount of bond given by the original defendant nor even by the size of the counterclaim, and is free to set the bond in an amount that it "just and reasonable under all the circumstances." Id. At 80.

To take a different hypothetical from Moore's, if Clipper had a claim for only $1,000 under the joint venture agreement and Global a claim for $1 million then despite any "need" to obtain security Clipper could, as it does now, attempt to limit Global's right to this maritime remedy under Rule B in precisely the district where it has proved most effective since electronic fund transfers (EFTs) were held to be attachable property. See Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 278 (2d. Cir. 2002) ("EFT funds in the hands of an intermediary bank may be attached pursuant to Admiralty Rule B(1)(a).") The

5

reason for the spate of maritime attachments in this district is precisely because EFTs transit the U.S. Clearing House system, which is based in Manhattan. A rule either limiting countersecurity or restricting a maritime defendant's right to its own Rule B relief would be both inequitable and "encourage sham suits and races to the court house." Supra. Here, had Global "raced to the Courthouse" and filed a Rule B action first it would have been entitled to attach an amount equal to its claim. The fact that its claims are, simply as a matter of timing, "counterclaims" should not limit this right.

If the Court does limit the initial countersecurity that Clipper is required to post now to $154,647.73, it is respectfully submitted that in the Court's exercise of its discretion it would be equitable to order that (1) Clipper promptly inform Global's counsel of additional attachments and within three (3) business days deposit into the Court's registry the same amount as any additional funds of Global that are restrained pursuant to Clipper's PMAGs, and (2) that such order is without prejudice to Global filing its own separate Rule B action against, inter alia, Clipper here or elsewhere for the balance of Global's unsecured claims, just as Clipper has already exercised that right in Switzerland.

6

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that Plaintiff be ordered, pursuant to Supplemental Rule E(7) to post a bond or other security satisfactory to the Court in the sum of $2,077,173.90 and for such other relief as is fair and equitable and as requested herein.

Date: New York, New York
February 14, 2007

                          Respectfully submitted,

                          BLANK ROME LLP

                          By: _/s/ Jeremy J.O. Harwood_
                               Jeremy J.O. Harwood
                               405 Lexington Avenue
                               New York, New York 10174
                               (212) 885-5000

                          *Attorneys for Defendant*

900200.00001/6514412v.2